STANDARD FOLDING-BED Co. *v.* OSGOOD *et al.*

*(Circuit Court, D. Massachusetts. June 30, 1892.)*

No. 2,727.

PATENTS FOR INVENTIONS—LIMITATION OF CLAIM—COMBINATION—FOLDING BEDS.

Claim 1 of letters patent No. 397,766, issued February 12, 1889, to Lyman W. Welch, for a folding bed, covers a combination whereby the head of the bed is carried in suspension by means of cords running over pulleys attached to the upright casing, each cord being fastened at one end to a lever crank, which is pivoted to the bed rail and attached at its lower end to a rod running to the leg of the bed, whereby the legs are folded downward as the bed is raised, the head of the bed meanwhile swinging inward and downward as the frame is folded up. *Held* that, as this method of transmitting an eccentric motion to the legs is common in the arts, and as there is little novelty in suspending instead of supporting the head of the bed, the claim must be strictly limited to the combination in detail, and is not infringed by a bed which is supported at the head by rods fastened at their upper ends to the upright casings, pivoted below to the bed rail, and projecting downward and connected at their lower ends to the legs of the bed, so that the resultant motion is like that described in the patent.

In Equity. Bill by the Standard Folding-Bed Company against Charles E. Osgood and others for infringement of letters patent Nos. 311,623 and 397,766, issued to Lyman W. Welch, February 3, 1885, and February 12, 1889, respectively, for folding beds. Decree dismissing the bill.

At the hearing the issue was really upon claim 1 of the later patent. As to the feature covered by this claim the inventor says:

"The object of my present invention is, in part, to provide the foot of the bed with automatically operating legs,—that is to say, with legs which automatically fold in when the bed is turned up, and which automatically turn out into position to serve as supports when the bed is pulled down."

In the specifications he describes this invention as follows :

"On the side of the bed rail is pivotally mounted a lever-like crank, *c*, to one end of which is attached the end of the chain or connector, C, and to the other end is attached a link or bar, E, which is coupled at its other end to one of the connected legs, D. The other end of chain, C, is attached to the bed proper, B. There will be or may be a crank, *c*, and bar, E, on each side of the bed proper, B, in order that both of the connected legs may be acted on simultaneously, but the arrangement will be the same as that described in any case.

"The operation of this device will be understood by noting the two positions of the parts as represented in Figs. 1 and 2. When the bed is lowered to the position seen in Fig. 1, the chain, C, holds the legs, D, through the medium of crank, *c*, and bar, E, in a position to support the bed; but when the bed, B, is turned up, the crank swings on its pivot, and folds the legs in. In reality the swinging of the legs is only relative. They always stand substantially in the same position with respect to the floor. When the bed, B, is turned down, the movement of the parts is reversed, and the same instrumentalities cause the legs to swing out to the position seen in Fig. 1. The strain of the chain, C, keeps the crank lever constantly aligned with that portion of the chain to which it is attached in all positions of the bed proper. This imparts the proper amount of movement to the lever to cause it to hold the legs in their position, perpendicular to the floor, while the bed proper is being raised and lowered. I am aware that it is not new to provide a folding bed with automatic devices whereby the legs are operated by the movement of the bed; but these are constructed differently from that herein described, and are not adapted to a bed suspended in the manner described herein."

Claim 1 reads as follows:

"The combination with the standard and bed proper of the crank lever, *c*, pivotally mounted at its middle to the face of the bed rail, the suspending chain or connector, C, secured at one end to the bed proper, and at the other end to one end of the said crank lever, the legs, D, hinged to the bed proper, and the rod, E, connecting the other end of said crank lever with the legs, D, said parts being respectively arranged as shown, whereby said crank lever is held at all times aligned with that portion of the connector to which it is attached."

Respondents' machine was a combination folding bedstead having a wardrobe or bookcase construction in front, and a folding bed in the back. The side rails of the bed frame were supported at the head by a rod or bar on each side, pivoted at the top to the upright casing, and near the bottom to the side rail. Each bar projected downard, beyond the point at which it was pivoted to the rail, and was pivoted at its end to another rod, which was fastened at its opposite end to the foot leg. The foot legs were pivoted to the foot of the bed. As the bed frame was raised, the head swung inward and downward, the ends of the rails having wheels attached to them which rolled downward on a curved track, to the floor, the foot legs being drawn inward, meanwhile, by the rods connecting them with the ends of the suspending bars.

*Edward T. Rice, Jr.*, for complainant.

*John H. Whipple*, for defendants.

PUTNAM, Circuit Judge. I have great doubts what my decision ought to be in this case, but, on the whole, I am better satisfied with the following conclusions than with any other. The invention owned by the complainant, as specifically set out in the first claim of the patent, which claim alone is in issue, appears ingenious, novel, simple, and useful. To sustain this bill, however, or to find that on the proofs respondents are infringers, would, I think, require me to hold that complainant monopolizes, in combination with an inward and downward movement of a suspended head of the bed, every method of transmitting an eccen-

tric motion for setting or folding the legs of the same bed. Such transmission is so common to all the arts as to cause me to conclude this is not admissible. Therefore I must keep the complainant strictly to the combination in detail, as described in its patent, so far as touches the issue in this particular case.

Combinations of an inward and downward movement of the head of the bed, with levers so arranged as to transmit to the legs the result of this movement for the purpose of setting or folding them, seem to have long anticipated the invention owned by the complainant; and the introduction of the additional element of suspending instead of supporting the bed, while useful, does not seem to me to involve such degree of novelty as to sustain any claims except very narrow ones. The inventor's merit in the case at bar relates only to the precise method used by him to secure compactness and simplicity. Therefore, while the complainant is, of course, entitled to the benefit of the rule of equivalents, they must be such as relate to details, excluding such as concern broad principles well known in many branches of the mechanical arts.

As it is not denied that respondents may lawfully carry the head of their bed by suspension, and combine with that the inward and downward movement in the precise method in which they do each, I think I must hold that they may transmit the resultant force by ordinary appliances, and that they have done no more than this. The cases cited by me in *Masten* v. *Hunt*, 51 Fed. Rep. 216, and *Dederick* v. *Seigmund*, 51 Fed. Rep. 233, seem of use here. Let respondents draw a decree of dismissal, with costs, and submit it to the court, with proof that it has been served on the complainant.